```
              UNITED STATES DISTRICT COURT
               DISTRICT OF NEW HAMPSHIRE
```

Anna C. Duguay

    v.                                       Civil No. 13-cv-273-JL
                                                    Opinion No. 2014 DNH 207

Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration

**SUMMARY ORDER**

Anna C. Duguay has appealed the Social Security Administration's ("SSA") denial of her applications for disability insurance benefits and Supplemental Security Income, which claimed an onset date of March 2011. An administrative law judge at the SSA ("ALJ") ruled that, despite Duguay's severe impairments (i.e., anxiety disorder/post-traumatic stress disorder and "minor motor seizures"), she retains the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled. See 20 C.F.R. §§ 404.1505(a), 416.905(a).

The Appeals Council later denied Duguay's request for review of the ALJ's decision, see id. §§ 404.968(a), 416.1479, so the ALJ's decision became the SSA's final decision on Duguay's application, see id. §§ 404.981, 416.1481. She appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Duguay has filed a motion to reverse the decision. See L.R. 9.1(b). She argues that the ALJ erred by (1) misidentifying her severe impairments, (2) failing to find that she suffered from an impairment or combination of impairments that meets or medically equals the severity of a listed impairment, specifically, anxiety disorder, see 20 C.F.R. § 404, subp. P, app. 1, pt. A, ¶ 12.06, which would have made an analysis of her RFC unnecessary, id. §§ 404.1520(d), 416.920(d), and (3) giving substantial weight to the assessment of a consulting psychologist, while giving only limited weight to the assessment of Duguay's treating psychiatrist.[1] The Commissioner of the SSA has filed a motion to affirm the decision, see L.R. 9.1(e), arguing that these findings were supported by substantial evidence, see Richardson v. Perales, 402 U.S. 389, 401 (1971). For the reasons explained

---

[1]Duguay also argues that the ALJ "made inconsistent findings" when he concluded that Duguay's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but also that she "had failed to establish a correlation between her allegations and the objective medical evidence." Those conclusions, in fact, reflect the separate inquiries that make up the first two steps of an ALJ's required evaluation of a claimant's alleged symptoms--a procedure which specifically contemplates, as the ALJ found here, that a claimant can have an underlying impairment that could produce the symptoms she claims yet still lack objective medical evidence substantiating those claims. SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 37416 (S.S.A. 1996). So those findings were not "inconsistent."

below, this court denies Duguay's motion and grants the Commissioner's.

   **Severe impairments.**  As noted at the outset, the ALJ found that Duguay suffered from severe impairments, to wit, "anxiety disorder/post-tramautic stress disorder" and "minor motor seizures."  Duguay argues that this was in error because "[t]he medical record does not document that the claimant was diagnosed with 'minor motor seizures' at all" but, rather, episodes of syncope, i.e., fainting, caused by her PTSD and anxiety.  It should be noted that syncope and seizures are often confused, see, e.g., Merck Manual of Diagnosis & Therapy 586 (Mark H. Beers, ed., 18th ed. 2006), but, in any event, the ALJ's confusion in terminology on this point made no difference. Duguay does not claim that syncope, as such, is itself a severe impairment in addition to her PTSD and anxiety, but rather that it is a symptom of her PTSD and anxiety disorder--which are among the impairments the ALJ found Duguay to have.  It is hard to imagine how this court could reverse an ALJ's decision because the ALF found the claimant to have too many severe impairments.

   Indeed, an ALJ's decision should not be reversed even for finding the claimant to have too <u>few</u> severe impairments, unless the lack of <u>any</u> severe impairment was the reason for the ultimate finding that the claimant was not disabled.  See Syms v. Astrue,

3

2011 DNH 138, 3-4 (DiClerico, J.) (collecting cases). This is so because, once an ALJ identifies one severe impairment, he "must consider the limiting effects of all [the impairments], even those that are not severe." 20 C.F.R. § 404.1545(e); see also id. § 416.923. While Duguay suggests that the ALJ in fact failed to consider the limiting effects of her syncope in the balance of analysis, that is belied by the decision itself, which, as the Commissioner points out, repeatedly refers to Duguay's syncope. The ALJ's mistake in identifying that condition as "minor motor seizures" in listing Duguay's severe impairments, then, cannot support her motion to reverse his decision.[2] See, e.g., Santiago v. Astrue, 2013 DNH 048, 5.

**Listed impairment.** Duguay claims that the ALJ erred in finding that she did not meet the criteria for a listed impairment, namely, anxiety disorder, under 20 C.F.R. § 404, subp. P, app. 1, pt. A, ¶ 12.06. The ALJ explained that he had considered not only that listing, but also those for epilepsy, see id. ¶ 11.03, and affective disorders, see id. ¶ 12.06, but

---

[2] The same is true of Duguay's argument that the ALJ failed to consider whether she had a combination of impairments that is severe, see 20 C.F.R. §§ 404.1520(c), 416.920(c), which, as Duguay acknowledges, "is not necessarily a reversible error if," as just discussed, "the ALJ considered the combination of impairments and the combined effect of multiple impairments later in [his] analysis." Contrary to Duguay's claim, the ALJ did so.

found that Duguay "does not have an impairment or combination of impairments that meets or medically equals" any of those listings.  Duguay claims that the ALJ made a number of errors in coming to that conclusion.[3]  The court disagrees.

Duguay argues that, "perhaps most importantly" (emphasis omitted), the ALJ mistakenly relied on the fact that Duguay's "representative did not argue at the hearing that the claimant's impairments met any listing."  But as the Commissioner points out--and the ALJ noted in the next sentence of his decision--the claimant indeed has the burden of proving that her impairment meets a listed impairment.  Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990).  Duguay acknowledges this point of law, but argues that it does not relieve the ALJ of his responsibility to "provide some analysis of [the] medical evidence in making [his] listing determination."  The ALJ did that here, however.

To meet the listing for an anxiety disorder, a claimant must have certain symptoms that result in either:

- two or more of the following:  marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in

---

[3] Duguay complains that the ALJ erroneously considered the listing for epilepsy even though she "did not allege that she had seizure activity or epilepsy," and the listing for affective disorders even though he did not find that she was severely impaired by one.  In line with what was just discussed above, however, it is hard to see reversible error in an ALJ's "over-consideration" of potential impairments.

5

>   maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration (the "paragraph B criteria"); or
>
>   • complete inability to function independently outside the area of one's home (the "paragraph C criteria").

20 C.F.R. § 404, subp. P, app. 1, pt. A, ¶ 12.06.  The ALJ found that Duguay did not meet any of the paragraph B criteria because she had only mild restrictions in activities of daily living; moderate difficulties in social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of extended duration.  The ALJ also found that Duguay failed to meet the paragraph C criteria in that there was no evidence of her complete inability to function independently outside the area of her home.

In finding that Duguay did not meet any of the listings that were considered, the ALJ specifically noted that he had "considered the reports of [Duguay's] treating physicians as well as the opinions of the State Agency medical consultants who evaluated this issue . . . and reached a similar conclusion."  As discussed in more detail <u>infra</u>, one of those consultants was Edward Martin, Ph.D, who found that Duguay had no more than moderate limitations in any of the areas tested by paragraph B criteria, and that she also did not meet the paragraph C criteria, of the anxiety disorder listing.  This was sufficient

6

evidence to support the ALJ's identical findings.[4]  See Gaudette ex rel. D.P. v. Colvin, 2014 DNH 022, 3-4.  Contrary to Duguay's claim, then, the ALJ did not fail to "reveal the conflicting medical evidence that he relied upon in the record to decide [Duguay] did not meet the mental impairment listings."

As further support for his conclusions that Duguay did not meet the criteria for a listed anxiety disorder, the ALJ relied on a "function report" that Duguay had submitted to the SSA. Duguay claims that, in so doing, the ALJ "mis-stated" the report insofar as he found that it showed that Duguay (1) "lives in a house with family without any noted special accommodations and services," (2) did not "report limitations in her physical functioning," and (3) "reports regular interactions with friends, on the phone, by texting or in person."  These observations are accurate despite Duguay's quibbling that (1) she "was not asked" on the form "about any special accommodations," (2) she reported, on the form, limitations on her emotional functioning due to her PTSD, and (3) in reporting that she "spen[t] time with others," she answered further that she did it "not too often."  See Allard v. Colvin, 2014 DNH 034, 7-8 n.4 (ruling that claimant's report

---

[4]As discussed infra, the ALJ acted within his discretion in giving substantial weight to Martin's opinions.

of her activities adequately supported the ALJ's findings even if he slightly overstated their frequency).

More importantly, Duguay does not point to anything on the form suggesting that, contrary to the ALJ's finding, she in fact meets at least two of the paragraph B criteria, or the paragraph C criteria, necessary to satisfy the anxiety disorder listing. Indeed, in her motion to reverse, Duguay does not point to any evidence in the record that "conflicts" with the ALJ's findings that she did not in fact meet the criteria for an anxiety disorder, nor, for that matter, does she even identify which of those criteria she claims to satisfy. The ALJ's conclusion that Duguay did not suffer from a listed anxiety disorder was both adequately supported and adequately explained.

**Opinion evidence.** Finally, Duguay argues that the ALJ erred by giving substantial weight to the opinions of Martin, but limited weight to the opinions of Duguay's treating psychiatrist, Dr. Philip Santora, in determining her RFC. In September 2012, Santora completed a "mental impairment questionnaire" opining that Duguay had marked impairments in social functioning and in maintaining concentration, persistence, or pace, as well as serious limitations in her ability to interact with the general public, to maintain attention for two-hour periods, and to sustain an ordinary routine without supervision. The ALJ,

however, found that these opinions were "not supported by [Duguay's] mental health records, including Dr. Santora's own treatment notes." In support of this finding, the ALJ pointed to places in Santora's notes describing test results that were "indicative of moderate symptoms[,] not marked," as well as his observations that Duguay "has good attention span and concentration, and fair to good insight and judgment."

In her motion to reverse, Duguay does not question the ALJ's characterization of Santora's notes, nor the ALJ's reliance on them as undermining Santora's opinions. Instead, Duguay argues that the ALJ erred by failing to consider treatment notes from a different source, Kate Murphy, a licensed clinical mental health counselor who is part of the same practice as Santora, the Greater Nashua Mental Health Center. While the ALJ's decision does not mention Murphy by name, it specifically refers to "[t]reatment notes from [Santora's] practice at Greater Nashua Mental Health Center." Moreover, aside from a reference to Murphy's observations at an evaluation and several subsequent counseling sessions in early 2012 that Duguay was "visibly trembling," the motion to reverse does not identify anything in Murphy's treatment notes that supports Santora's opinions as to Duguay's mental and social limitations. So the ALJ did not err by failing to mention Kelly's observations by name in finding

that Duguay's mental health records, including treatment notes from Santora's practice, did not support his opinions that Duguay suffered marked impairments or serious limitations in several areas of functioning. See Chapin v. Astrue, 2012 DNH 177, 3-6 & n.2 (upholding ALJ's decision to give limited weight to the opinions of medical sources that were inconsistent with their treatment notes, even though the ALJ identified one of those sources only by the name of her practice).

The ALJ likewise did not err by giving substantial weight to Martin's opinions, despite Duguay's familiar argument that those opinions were "based on an incomplete record." It is true, as Duguay points out, that the report of Martin's opinions was dated July 31, 2012, and stated that they were based on, among earlier records, those generated by Greater Nashua Mental Health Center through May 29, 2012. But, aside from the mental impairment questionnaire that Santora completed in September 2012--to which, as just discussed, the ALJ supportably declined to give controlling weight insofar as it noted marked impairments or serious limitations--Duguay does not point to anything in her medical records from May 30, 2012 or later that contradicts Martin's opinions in any way.[5] So the ALJ properly gave

---

[5] Elsewhere in her motion, Duguay refers to reports of her emergency room visit in August 2012, where she reported injuring her elbow when she fell after passing out, as well as a September

substantial weight to those opinions in determining Duguay's RFC. See, e.g., Comeau v. Colvin, 2013 DNH 145, 18-19, aff'd without opinion, No. 13-2542 (1st Cir. June 25, 2014).

Indeed, as this court has repeatedly stated, "an ALJ can rely exclusively on the assessments of non-testifying, non-examining" medical sources in adjudicating a claimant's RFC, and conflicts between those assessments and other medical testimony "are for the ALJ to resolve." Morin v. Astrue, 2011 DNH 091, 9-10 (citing Berrios-Lopez v. Sec'y of HHS, 951 F.2d 427, 431-32 (1st Cir. 1991)) and Tremblay v. Sec'y of HHS, 676 F.2d 11, 12 (1st Cir. 1991)).  Furthermore, "[t]he ALJ decision to resolve that conflict against the claimant should be affirmed if 'that conclusion has substantial support in the record.'" Id. (quoting Tremblay, 676 F.2d at 12).  As just discussed, that is the case here, where Duguay has pointed to nothing in the record that meaningfully undermines the ALJ's reliance on Martin's opinions rather than Santora's.

---

2012 treatment note from Santora noting her report of 4-5 syncope episodes since June 2012.  But Duguay's motion does not explain how these reports undermine Martin's opinions as to her mental and social functioning.  To the contrary, Santora considered these episodes to be a potential indicator of partial complex seizure disorder--an impairment that, in her motion to reverse, Duguay claims the ALJ was wrong even to consider.

11

**Conclusion.** Based on the foregoing, Duguay's motion to reverse the ALJ's decision (document no. 8) is DENIED, and the Commissioner's motion to affirm that decision (document no. 10) is GRANTED. See 42 U.S.C. § 405(g). The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: September 30, 2014

cc: Janine Gawryl, Esq.
   Robert J. Rabuck, AUSA